**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IESEN MIELCAREK,** | ) |
| | ) |
| Plaintiff, | )  1:18-cv-01059 |
| | ) |
| v. | ) |
| | ) |
| **LOANDEPOT.COM, LLC,** | ) |
| **d/b/a LOANDEPOT,** | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

NOW COMES the Plaintiff, IESEN MIELCAREK, by and through her attorneys, SMITHMARCO, P.C., and for her complaint against the Defendant, LOANDEPOT.COM, LLC, d/b/a LOANDEPOT, Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq., and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691, *et seq*.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691, *et seq*. and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. IESEN MIELCAREK, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Plainfield, County of Will, State of Illinois.

5. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

6. At all relevant times, Plaintiff was an "applicant" as that term is defined by 15 U.S.C. §1691a(b).

7. LOANDEPOT.COM, LLC, d/b/a LOANDEPOT (hereinafter, "Defendant") is a business entity conducting business within the State of Illinois. Defendant has its principal place of business in the State of Washington and is incorporated in the State of Delaware.

8. At all relevant times, Defendant was a "creditor" as that term is defined by 15 U.S.C. §1691a(e).

9. Credit reports, as alleged in this pleading, are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

### IV. ALLEGATIONS

#### FACTS COMMON TO ALL COUNTS

10. In or around June of 2017, Plaintiff was interested in purchasing a house and was referred by a real estate broker to Defendant to inquire about obtaining a loan.

11. On or about June 8, 2017, Plaintiff met with Jose Salazar, a duly authorized representative of Defendant, to inquire about obtaining a loan.

12. On or about June 8, 2017, Defendant obtained Plaintiff's credit report from one or more consumer reporting agencies, as that term is defined by 15 U.S.C. §1681a(f), at which point Defendant advised Plaintiff that she needed to "work on" her credit before she would be able to obtain a loan under her desired terms. Plaintiff and Defendant agreed that Plaintiff would attempt to pay down some of her credit balances and that Defendant would obtain a new credit report for Plaintiff on October 10, 2017.

## COUNT I: IESEN MIELCAREK v. LOANDEPOT.COM, LLC
## FOR VIOLATIONS OF THE FCRA

13. Plaintiff re-alleges and incorporates by reference paragraphs 1-12 of this complaint as though fully set forth herein.

14. As October 10, 2017 approached, Plaintiff realized that she was not yet ready to obtain a loan to purchase a home and instead wished to further improve her credit by continuing to rent as she paid down her credit balances.

15. In or around September of 2017, Plaintiff attempted multiple times to reach Mr. Salazar, the representative of Defendant with whom she had spoken previously, to no avail.

16. On or about September 29, 2017, Plaintiff spoke with a representative of Defendant that identified herself as Carmen, a member of Mr. Salazar's "team."

17. On or about September 29, 2017, Plaintiff informed Defendant that she was not ready to obtain a loan and instructed Defendant not to obtain her credit report, as she did not want another "inquiry" to appear on her report. Defendant acknowledged Plaintiff's instruction and confirmed that no report would be obtained.

18. On or about October 26, 2017, despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's individual and personal credit file from one or more "consumer reporting agencies," as that term is defined by 15 U.S.C. §1681a(f).

19. At no time on or prior to October 26, 2017 did Plaintiff have a personal credit account with Defendant.

20. At no time on or prior to October 26, 2017 did Plaintiff owe a debt to Defendant.

21. Given the facts delineated above, prior to October 26, 2017, Defendant had no information in its possession to suggest that Plaintiff owed a debt to Defendant.

22. Given the facts delineated above, prior to October 26, 2017, had no information in its possession to suggest that Plaintiff was responsible to pay a debt to Defendant.

23. At no time after Plaintiff notified Defendant on or about September 29, 2017 that she no longer wanted Defendant to obtain her credit report did Plaintiff consent to Defendant accessing her individual and personal credit report.

24. On or about October 26, 2017, despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's individual and personal credit file from one or more "consumer reporting agencies," as that term is defined by 15 U.S.C. §1681a(f).

25. On or about October 26, 2017, despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's individual and personal credit report without a legitimate business reason to do so.

26. On or about October 26, 2017, despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's individual and personal credit report impermissibly.

27. On or about October 26, 2017, despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's individual and personal credit report without first informing Plaintiff of its intent to do so.

28. On or about October 26, 2017, at the time Defendant accessed Plaintiff's individual and personal credit report, Defendant reviewed Plaintiff's private information.

29. On or about October 26, 2017, at the time Defendant accessed Plaintiff's individual and personal credit report, Defendant impermissibly obtained information relative to Plaintiff's personal and individual credit accounts.

30. On or about October 26, 2017, at the time Defendant accessed Plaintiff's individual and personal credit report, Defendant impermissibly obtained information relative to Plaintiff's payment history on her individual credit accounts.

31. On or about October 26, 2017, at the time Defendant accessed Plaintiff's individual and personal credit report, Defendant impermissibly obtained information relative to Plaintiff's credit history and credit worthiness.

32. On or about October 26, 2017, at the time Defendant accessed Plaintiff's individual and personal credit report, Plaintiff's private financial information was published to Defendant.

33. On or about October 26, 2017, at the time Defendant accessed Plaintiff's individual and personal credit report, unknown employees, representative and/or agents of Defendant viewed Plaintiff's private financial information.

34. On or about October 26, 2017, at the time Defendant accessed Plaintiff's individual and personal credit report, Defendant impermissibly obtained personal information about Plaintiff, such as her current and past addresses; date of birth; employment history; and, telephone numbers.

35. On or about October 26, 2017, at the time Defendant accessed Plaintiff's individual and personal credit report, Plaintiff's personal information, as delineated above, was published to Defendant.

36. Defendant's access of Plaintiff's credit report will continue to be displayed on Plaintiff's credit report for two (2) years subsequent to October 26, 2017.

37. Defendant's conduct, as delineated above, is a violation of 15 U.S.C. §1681b.

38. As a result of Defendant's conduct, as delineated above, Plaintiff has suffered actual damages in the form of financial and dignitary harm arising from the Defendant's review of her personal information and her credit information and an injury to her credit rating and reputation. Furthermore, Plaintiff will continue to suffer the same harm for an indefinite time in the future, all to Plaintiff's great detriment and loss.

WHEREFORE, Plaintiff, IESEN MIELCAREK, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

    a. All actual compensatory damages suffered;

    b. Statutory damages of $1,000.00 for Defendant's violation of the FCRA.

    c. Punitive damages;

    d. Plaintiff's attorneys' fees and costs; and,

    e. Any other relief deemed appropriate by this Honorable Court.

### COUNT I: IESEN MIELCAREK v. LOANDEPOT.COM, LLC
### FOR VIOLATIONS OF THE ECOA

39. Plaintiff re-alleges and incorporates by reference paragraphs 1-12 of this complaint as though fully set forth herein.

40. During the course of Plaintiff's meeting with Defendant on or about June 8, 2017, Plaintiff inquired with Defendant as to whether Plaintiff would be able to obtain a loan to purchase a home.

41. During the course of Plaintiff's meeting with Defendant on or about June 8, 2017, Plaintiff applied for a loan to purchase a home.

42. During the course of Plaintiff's meeting with Defendant on or about June 8, 2017, Defendant denied Plaintiff's application for a loan to purchase a home.

43. Defendant based its decision to deny Plaintiff's application based in whole or in part on the information it received and reviewed in Plaintiff's credit report from Trans Union, Experian, and Equifax.

44. Defendant rejected Plaintiff's application based upon information contained within the report received from Trans Union, Experian, and Equifax.

45. Subsequent to Plaintiff's application to Defendant of June 8, 2017, Defendant did not provide Plaintiff with:

   a. A written statement of reason(s) for Defendant's decision to deny Plaintiff's application for credit or written notification of adverse action which discloses (i) Plaintiff's right to a statement of reasons within thirty days after receipt by Defendant of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained;

   b. A statement that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide the consumer the specific reasons why the adverse action was taken;

   c. Notice of her right to obtain, under §1681j of the FCRA, a free copy of her consumer report from the consumer reporting agency from which Defendant obtained Plaintiff's consumer report; or

   d. Notice of her right to dispute, under §1681i of the FCRA, the accuracy or completeness of any information in a consumer report furnished by the consumer reporting agency to Defendant.

46. Defendant's rejection of Plaintiff's applications constituted "adverse action" as that term is defined by the ECOA, 15 U.S.C. §1691(d)(6).

47. Pursuant to section 1691(d) of the ECOA:

   (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by—

   (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or

(B) giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained. Such statement may be given orally if the written notification advises the applicant of his right to have the statement of reasons confirmed in writing on written request.

(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

15 U.S.C. § 1691(d)(2), (3).

48. Defendant violated the ECOA. In taking adverse action against Plaintiff in response to her application with Defendant, Defendant failed to: (i) provide Plaintiff with a statement of reasons in writing for the adverse action taken; or (ii) provide written notification of adverse action which disclosed to the Plaintiff her right to a statement of reasons for the adverse action within thirty days after receipt by Defendant of a request made within sixty days after the notification of the denial of credit, and the identity of the person or office from which such statement may be obtained and provide the specific reasons for the adverse action taken.

49. The ECOA guarantees credit applicants the right to receive notice upon a creditor's taking adverse action against said applicant. This notice provides consumers with a "valuable educational benefit" and allows said applicants the opportunity to correct errors or otherwise take steps to improve their credit.

50. By entirely denying Plaintiff the rights afforded to her under the ECOA, Defendant denied Plaintiff valuable information to which she was entitled and which would have assisted her in understanding the bases for Defendant's denial of credit, which in turn would have provided Plaintiff with knowledge and information sufficient to take steps to remedy any negative issues with her credit.

51. By depriving Plaintiff of the reason(s) for its denial of credit, Defendant deprived Plaintiff of the information necessary to take remedial action and improve her chances of obtaining financing in the future, from Defendant and other potential creditors.

52. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

53. As a result of the above violations of the ECOA, Defendant is liable to Plaintiff for actual damages, punitive damages, attorneys' fees and costs.

WHEREFORE, Plaintiff, IESEN MIELCAREK, by and through her attorneys, respectfully prays for judgment as follows:

    a. Awarding Plaintiff all actual, compensatory, and punitive damages;

    b. Awarding Plaintiff reasonable attorneys' fees and costs of this action;

### V. JURY DEMAND

54. Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
**IESEN MIELCAREK**

By:    s/ David M. Marco
       Attorney for Plaintiff

Dated: February 12, 2018

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone: (312) 546-6539
Facsimile: (888) 418-1277
E-Mail: dmarco@smithmarco.com